IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.     Crim. No. 24-367-JCH

ADIN KELLNER,

    Defendant.

### UNITED STATES' RESPONSE TO DEFENDANT'S OBJECTIONS TO THE PRE-SENTENCE REPORT AND SENTENCING MEMORANDUM

Time and again—specifically, eleven times over the course of approximately four years—Defendant Adin Kellner purchased guns for a group of three young men who he knew could not legally possess them, including his younger brother[1]. Unsurprisingly, those weapons were used in numerous shootings across Albuquerque. The United States does not allege that it was Defendant who pulled the trigger during those incidents. But-for Mr. Kellner, those nearly one dozen firearms would have not made their way into the hands of those who did. Because he knew what he was doing was illegal and because he knew he was putting guns directly into the hands of violent young men, he bears culpability for the harm those guns caused this community.

For the following reasons, the United States requests that the Court sentence Defendant to a term of imprisonment of 57 months. Such a sentence is appropriate under the circumstances of this case, fulfills the sentencing goals laid out in 18 U.S.C. § 3553(a), represents a high-end guideline sentence, and is in the public interest.

---

[1] This Court sentenced Riley Kellner, Adin Kellner's younger brother, to 15 months imprisonment on October 14, 2025. *See* Crim. No. 24-1404-JCH.

**I.     THE PRE-SENTENCE REPORT**

The United States Probation Office ("USPO") disclosed the Pre-Sentence Report ("PSR") on September 15, 2025. Doc. 60. Utilizing the 2021 version of the sentencing guidelines manual, the USPO calculated Defendant's base offense level at 14. PSR at ¶ 53. Factoring in (1) a four-level upward adjustment for the offense involving 8-24 firearms (§2K2.1(b)(1)(B)), (2) a four-level upward adjustment for engaging in the trafficking of firearms (§2K2.1(b)(5)), (3) a four-level upward adjustment for transferring any firearm with the knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony (§2K2.1(b)(6)(B)), and (4) a three-level downward adjustment for accepting responsibility (§§3E1.1(a), (b)), Defendant's total offense level is 23. PSR at ¶¶ 54-64. The United States does not have any objections to the PSR.

**II.    RESPONSE TO DEFENDANT'S OBJECTION TO THE PRE-SENTENCE REPORT**

Defendant raises one objection to the PSR. Doc. 64. He argues that the USPO improperly applied the four-level upward adjustment for engaging in the trafficking of firearms pursuant to U.S.S.G. §2K2.1(b)(5). *Id.* In sum, Defendant argues that he made the unlawful firearms purchases that form the basis of Counts 1-10, but that "there is no apparent evidence that he made the purchases charged in Counts 1-10 subsequent to, or while knowing or having reason to believe that the guns would [be] transferred to an 'individual whose possession or receipt of the firearm would be unlawful.'" *Id.* at 4.

U.S.S.G. §2K2.1(b)(5) calls for a four-level upward adjustment "[i]f the defendant engaged in the trafficking of firearms." Application note 13 is instructive:

> (A) Subsection (b)(5) applies, regardless of whether anything of value was exchanged, if the defendant –
>
>> (i) transported, transferred, or otherwise disposed of two or more firearms to another individual, or received two or more firearms with the intent to

> transport, transfer, or otherwise dispose of firearms to another individual; and
>
> (ii) knew or had reason to believe that such conduct would result in the transport, transfer, or disposal of a firearm to an individual –
>
> > (I) whose possession or receipt would be unlawful; or
> >
> > (II) who intended to use or dispose of the firearm unlawfully.

U.S.S.G. §2K2.1, n.13(A).

In advancing this argument, Defendant asks the Court to believe that of the eleven straw purchases he made, he only had the requisite knowledge required by §2K2.1(b)(5) once. This is neither believable nor true. To resolve this objection, the Court need look no further than Defendant's own words. On March 7, 2023, ATF Special Agent Brenton Hutson and APD Detective Leah Wise interviewed Mr. Kellner in conjunction with a state arrest. To accompany this filing, the United States provides the Court with the video recording (approximately one hour in length) of this interview and a summary report prepared by Agent Hutson.

Defendant's post-*Miranda* statements illustrate that he knew—every time he purchased a firearm for one of the three underage boys—that the other individual's possession of the firearm would be unlawful. For example, when Detective Wise confronted Defendant about knowing that he purchased firearms for other people, he explained the scheme to her. *See* Agent Hutson Report at ¶ 2(g) ("Det. Wise asked KELLNER to explain how it goes when he buys guns, and they pay him. KELNER stated, "Umm, I usually just go in there and get it. And then, usually I would, like, get a bill, like I would, try to get a bill of sale and or like gift it to them. But, my dumbass didn't do that. Obviously, and, the people that I pulled, that I did it for, are retarded and don't know how to use a firearm properly, and in the right instance, so."). Throughout the interview, Agent Hutson and Detective Wise confirmed which firearms Defendant purchased for each of the three boys.

3

When Detective Wise asked Defendant why "these guys" do not buy the firearms themselves, Defendant replied, "Underage, obviously." *See* Agent Hutson Report at ¶ 2(l) ("Det. Wise asked why 'these guys' do not buy them. KELLNER replied, 'Underage, obviously.' Det. Wise stated, 'So they can't buy them,' to which KELLNER appeared to shake his head side-to-side seeming to indicate they could not. KELLNER explained he was the oldest one of everybody, and was a nice guy, that he hated to say no, and that they took advantage of it. KELLNER explained these individuals were like his brothers."); *see also* Agent Hutson Report at ¶ 2(t) ("At approximately 12:40:40, SA Hutson noted that obviously the people they were speaking about were underage and began to ask if KELLNER thought they knew it was a felony for them to try and buy the firearms. Before SA Hutson could complete his question, KELLNER stated, 'Oh dude they knew couldn't even walk into a, well they could walk into a gun store, and buy like clips and maybe ammo if they're lucky. But they knew they couldn't buy a firearm. They knew that you had to be 21 with no felonies.' SA Hutson asked if they told KELLNER that. KELLNER replied, 'Oh I already knew that. They knew that, yeah. We all knew that. I knew that walking in and, you know what I mean, like I can get caught up with this and that's a felony for me. And I haven't even done anything, you know what I mean.'").

Defendant attempts to draw a line between the purchases that form the basis of Counts 1-10 and Count 11. No such distinction exists. Based on Defendant's statements, the United States has far exceeded its burden by a preponderance standard. It therefore requests that the Court overrule this objection and apply the four-level upward adjustment pursuant to §2K2.1(b)(5).

### III.    LEGAL STANDARD

In imposing a sentence that is sufficient, but not greater than necessary, the court must consider the following factors:

4

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed – (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available;
> (4) the kinds of sentence and the sentencing range established for – (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . .
> (5) any pertinent policy statement;
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a)(1) – (7).

Because the United States Sentencing Guidelines are advisory, *see e.g., United States v. Booker*, 543 U.S. 220 (2005), the Court may exercise its discretion to vary upward when appropriate. The Tenth Circuit has made clear that "district courts have broad discretion to consider particular facts in fashioning a sentence under 18 U.S.C. § 3553(a), even when those facts are already accounted for in the advisory guidelines range." *See United States v. Barnes*, 890 F.3d 910, 921 (10th Cir. 2018) (internal quotation marks and citations omitted); *see also United States v. Walker*, 74 F.4th 1163 (10th Cir. 2023) (citing *Barnes*, upholding a district court's decision to vary upward to 300 months when advisory guidelines range was 84 to 105 months, and finding the sentence was not arbitrary, capricious, whimsical, or manifestly unreasonable). Utilizing its broad discretion, a district court can broadly consider a defendant's conduct for sentencing purposes, even if such conduct resulted in an acquittal or was not charged at all. *See United States v. Watts*, 519 U.S. 148 (1997); *see also* U.S.S.G. §5K2.21. It is the government that bears the burden of proving sentencing issues by a preponderance of the evidence. *See United States v. Orr*, 567 F.3d 610, 614 (10th Cir. 2009).

5

**IV.   ARGUMENT**

      **A. The nature and circumstances of the offense and the history and characteristics of the defendant**

The nature and circumstances of this offense are fairly straightforward: Defendant repeatedly—and over the course of a few years—purchased firearms for three others. The ATF has substantial evidence that these firearms were used in multiple shootings across the city. To be clear, the United States is not alleging that it was Defendant who was doing the shooting. Without Defendant putting those guns into the hands of those he knew shouldn't have them—time and again—those shootings simply would not have happened. Though Defendant does not have prior felony convictions nor a remarkable criminal history, this fact should not weigh in his favor. He misused his legal status for nearly three years to buy firearms for others. Therefore, the nature and circumstances of this offense, combined with Defendant's history and characteristics, warrants a sentence within Defendant's advisory sentencing guidelines range.

      **B. The need for the sentence to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence, to protect the public from further crimes of the defendant**

By sentencing Defendant to a term of imprisonment of 57 months, this Court has the ability to accomplish numerous sentencing goals, chief among them to reflect the seriousness of illegally buying firearms for others who use them to commit crimes. Defendant asks the Court to simply disregard all of his conduct and to turn a blind eye to how those eleven firearms were used once he illegally transferred them. He asks for a time served sentence, which equates to a total of four days. Such a sentence would not be in accordance with the Section 3553 factors and would not further the sentencing goals of just punishment or adequate deterrence. It is worth emphasizing that though Defendant now expresses remorse for his actions, he only stopped buying firearms for

others because federal and state law enforcement arrested him. He continued to operate entirely undeterred for nearly one dozen unlawful transactions. Defendant must serve some time in custody due to the repeated and multi-year nature of his crimes. Sentencing Defendant to effectively no time in custody—as he requests—would only serve to send the message that if someone repeatedly buys firearms for others (who repeatedly shoot them), then the individual illegally putting those firearms into the hands of others bears no responsibility. The Court should reject Defendant's invitation to fully disregard the sentencing guidelines and to send the broader community this message.

### C. The kinds of sentences available, the sentencing range established for this defendant, and the need to avoid unwarranted sentencing disparities

A violation of 18 U.S.C. §§ 922(a)(6) and 924 carries a maximum of ten years imprisonment per count. As stated above, Defendant's advisory sentencing guidelines range is 46 to 57 months. Doc. 60 at ¶ 110. A high-end guideline sentence is not only warranted under the specific circumstances of this case, but it further the sentencing goal of avoiding unwarranted sentencing disparities because it ensures that similarly-situated defendants are sentenced similarly.

### V. CONCLUSION

For the aforementioned reasons, the United States requests that the Court sentence Defendant to a term of imprisonment of 57 months to be followed by three years of supervised release.

    Respectfully submitted,

    RYAN ELLISON
    Acting United States Attorney

    /s/
    JAYMIE L. ROYBAL
    Assistant United States Attorney
    201 3rd St. NW, Suite 900

Albuquerque, NM 87102<br>(505) 224-1413

I HEREBY CERTIFY that I filed the foregoing pleading electronically through the CM/ECF system which caused defense counsel, Noah Gelb, to be served by electronic means, as reflected on the Notice of Electronic Filing as indicated therein on December 14, 2025.

/s/
Jaymie L. Roybal
Assistant United States Attorney